IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OCEANCONNECT.COM INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-07-1053 |
| | § | IN ADMIRALTY |
| CHEMOIL CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**
<u>**ON DEFENDANT'S MOTION TO COMPEL ARBITRATION**</u>

This matter was referred by United States District Judge Lee H. Rosenthal, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #17). Plaintiff OceanConnect.com Inc. ("Plaintiff," "OceanConnect") brought this maritime action against Defendant Chemoil Corporation ("Defendant," "Chemoil") for indemnity and contribution "arising out of a breach of a maritime contract and commission of a maritime tort for the sale and supply of defective bunkers (fuel oil)." (Plaintiff's First Amended Original Complaint ["Complaint"], Docket Entry #4, at 1). Pending before the court is Defendant's motion to compel arbitration and to stay this action. (Motion to Compel Arbitration and to Stay Action ["Motion to Compel"], Docket Entry #14). In its motion, Defendant argues that Plaintiff is required, by contract, to submit to arbitration any disputes that arise from the delivery of the allegedly defective fuel oil. (*Id.* at 1-2). Having reviewed the pleadings, the evidence submitted, and the applicable law, the court recommends that Defendant's motion be GRANTED, in part, and that this action be DISMISSED, without prejudice.

**Background**

In early 2003, a vessel known as the Gant Vision allegedly suffered extensive engine damage after fueling with oil supplied by Chemoil. (Complaint at 4; Response, Docket Entry #15, at 2).

Chemoil originally sold the fuel oil bunkers to LG International Pte. Ltd. ("LG International"), which immediately sold them to OceanConnect pursuant to a prior business arrangement. (Motion to Compel at 4). OceanConnect, in turn, sold the bunkers to STX Pan Ocean ("Pan Ocean"), a South Korean company that chartered the Gant Vision and arranged for the bunkers to be delivered onboard. (*Id.*). As a result of the damage to the ship's engines, the Gant Vision's owner, Sifandros Carriers Ltd. ("Sifrandos"), filed an arbitration claim against Pan Ocean, and the parties subsequently settled for approximately $860,000.00. (*Id.* at 3). Pan Ocean paid Sifandros, and then filed a lawsuit against OceanConnect in a South Korean court to recover the damages caused by the defective bunkers. (*Id.*). Judgment was rendered in Pan Ocean's favor, and OceanConnect appealed. (*Id.* at 4). That appeal is pending. (*Id.*). When LG International sold the bunkers to OceanConnect, it also assigned to it any claims it might have against Chemoil with regard to those bunkers. (Complaint at 2). By virtue of this assignment, OceanConnect filed this lawsuit directly against Chemoil, seeking contribution and indemnification from Defendant for any damages that it may be ordered to pay to Pan Ocean. (*Id.*). In this motion, Chemoil argues that OceanConnect's claims are subject to an arbitration provision that was incorporated, by reference, into the contract for the sale of the bunkers at issue. (*Id.* at 9).

**Standard of Review**

The Federal Arbitration Act ("FAA") dictates that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. In weighing a motion to compel arbitration, the court must first decide "'whether the parties agreed to arbitrate the dispute in question.'" *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *Webb v. Investacorp,*

*Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)).  That determination, in turn, is governed by a two-step inquiry: "'(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'"  *Id*. (quoting *Webb*, 89 F.3d at 258); *accord Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006).  If the court finds that the parties have agreed to arbitrate the particular dispute, it "must determine if any legal constraints foreclose arbitration of those claims."  *Id.*; *accord Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 605, 628 (1985).

Further, "[w]hen deciding whether the parties agreed to arbitrate the dispute in question, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'"  *Webb*, 89 F.3d at 258 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *accord Tittle*, 463 F.3d at 419; *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073-74 (5th Cir. 2002).  "[D]ue regard," however, "must be given to the federal policy favoring arbitration."  *Volt Info. Sci., Inc. v. Board of Trs. of Leland Stanford*, 489 U.S. 468, 475-76 (1989); *accord Mitsubishi Motors Corp*., 473 U.S. at 626; Harvey v. Joyce, 199 F.3d 790, 793 (5th Cir. 2000).  It follows that "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  *Id*. (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)); *see Tittle*, 463 F.3d at 418; *Fleetwood Enters. Inc*., 280 F.3d at 1073.  In addition, if the court finds that the subject of the parties' dispute is even "'arguably arbitrable,'" then all other matters that might affect that determination are to be decided by the arbitrator, and not the court. *See Brown*, 462 F.3d at 396; *Waverly Mining Prods. Co. v. United Steelworkers of Am.*, 633 F.2d 682, 684 (5th Cir. 1980) (citing *Alabama Power Co. v. Local Union No. 391*, 612 F.2d 960, 963 (5th Cir. 1980)).

**Discussion**

In this motion, Chemoil argues that OceanConnect's claims are subject to arbitration under the terms of the contract under which the allegedly defective bunkers were sold. (Motion to Compel at 9). OceanConnect disputes this notion, but also argues that even if the contract between the parties did contain an arbitration provision, Chemoil has waived its right to invoke it by failing to seek arbitration within 90 days of the events giving rise to this lawsuit. (Response at 1-2). In reply, Chemoil contends not only that Plaintiff misconstrues the law, but contends, as well, that the 90-day provision does not apply to these circumstances. (Reply, Docket Entry #16, at 2).

*The Contract*

To decide Defendant's motion, the court first must determine whether there is, in fact, a valid contract between the parties that includes an agreement to arbitrate their disputes.[1] *See Tittle*, 463 F.3d at 418; *Webb*, 89 F.3d at 258. "It is a widely accepted principle of contracts that one who signs or accepts a written instrument will normally be bound in accordance with its written terms." *American Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003). Generally, acceptance of the terms of a written contract is shown by "signing and delivery." *Sciafe v. Associated Air Ctr., Inc.*, 100 F.3d 406, 410-11 (5th Cir. 1996) (quoting *Simmons & Simmons Constr. Co. v. Rea*, 286 S.W.2d 415, 418 (Tex. 1955)). However, a party may be bound by an agreement to arbitrate even in the absence of a signature. *See Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987). For example, "the existence of a contract can be implied from the parties' actions and conduct that indicate a mutual intent to be bound to their respective obligations." *Railroad Mgmt. Co., L.L.C. v. CFS Louisiana Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005). The ultimate issue

---

[1] In their pleadings, both parties refer the court to Texas law as well as to the Uniform Commercial Code.

is whether there was a "meeting of the minds" between the parties. *See Lang*, 321 F.3d at 538 (citing *Louisville & N.R. Co. v. Kentucky*, 161 U.S. 677, 692 (1896)); *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 808 (5th Cir. 1998).

In this case, the parties do not dispute that a contract was formed for the sale of bunker fuel. (Motion to Compel at 1; Response at 1-2, 13). They also do not dispute the fact that, by virtue of an assignment from LG International to OceanConnect, the contract for the sale of the bunker fuel is enforceable between Chemoil and OceanConnect. (Complaint at 2; Motion to Compel at 6 n.6). The dispute appears to center on the exact provisions that make up that contract. Chemoil sold the fuel oil bunkers pursuant to a bunker nomination[2] issued by OceanConnect to Chemoil. (Motion to Compel at 4 and Exhibit ["Ex."] A-1). While OceanConnect used LG International as the buyer, Chemoil confirmed the nomination to OceanConnect directly. (*Id*. at 4 and Ex. A-2). LG International technically purchased the bunkers, but it immediately sold them to OceanConnect, which then sold them to Pan Ocean. (*Id*. at 4 and Ex. B). The fuel delivery receipt was signed by the master/chief engineer of the M/V Gant Vision. (*Id.* at 4 and Ex. A-3). The delivery and acceptance of fuel oil bunkers, pursuant to a bunker nomination and subsequent confirmation, qualify as a "maritime transaction" or contract under the FAA. *See Exxon Corp. v. Central Gulf Lines*, 500 U.S. 603, 612-13 (1991)); *Tramp Oil & Marine Ltd. v. M/V Mermaid I*, 630 F. Supp. 630, 633 (D. P.R. 1987). (Motion to Compel at 5). In this case, then, the contract is evidenced by the written bunker nomination and confirmation, as well as the fuel delivery receipt. (*Id*. at Ex. A-1,

---

[2] In his affidavit, Adrian Tolson ("Tolson"), Chemoil's Vice President of Sales and Marketing, explains that the sale of fuel oil bunkers typically begins when Chemoil receives a "bunker nomination" from the offeree. (Motion to Compel at Ex. A). Once Chemoil receives the nomination, it issues an order confirmation. (*Id.*). Upon delivery of the bunkers, Chemoil then issues a fuel delivery receipt, which is signed by the person accepting the delivery. (*Id.*). Chemoil has attached copies of all three of these documents, evidencing the sale of the fuel oil bunkers in question. (*See id.* at Ex. A-1, A-2, and A-3).

A-2, and A-3).

The order confirmation at issue in this case, which was sent by Chemoil directly to OceanConnect on March 31, 2003, contains the following language:

> This sale is based on the standard terms and conditions of sale of marine fuel by CHEMOIL.
>
> * * * * *
>
> Please contact us if you require a copy of the standard terms and conditions of sale of marine fuel by CHEMOIL. We will assume that all parties agree to this confirmation unless we are notified in writing [within] 24 hours of the date and time that this message was sent.

(*Id.* at Ex. A-2). In his affidavit, Adrian Tolson, Chemoil's Vice President of Sales and Marketing, states that at all times these "terms and conditions [were] also available on Chemoil's website at www.chemoil.com." (*Id.* at Ex. A). The fuel delivery receipt, issued by Chemoil and signed by the master/chief engineer of the M/V Gant Vision on April 6, 2003, also refers to the terms and conditions, as follows:

> The marine fuel described herein is delivered in accordance with Chemoil Corporation's Standard Terms and Conditions of Sale (a copy of which has been provided to buyer prior to delivery) and on credit of the vessel.

(*Id.* at Ex. A-3). The terms and conditions include the detailed arbitration clause that is the focus of Defendant's motion.[3] (*Id.* at Ex. A-4). Plaintiff does not question the authenticity of these exhibits, nor does it claim that it raised any objection to the terms of this confirmation. Instead, Plaintiff counters this evidence with a declaration from its president and chief executive officer, Thomas Reilly, which states, in relevant part:

> At no time prior to the bunker sale contract at issue did Chemoil ever provide OC with a copy of the "standard terms and conditions of sale of marine fuel by CHEMOIL," Chemoil Corporation's Standard Terms and Conditions of Sale," or Chemoil Pacific's standard terms and conditions. OC never agreed in writing to the

---

[3] The arbitration clause is quoted in full on page 11 of this memorandum.

>incorporation of any Chemoil terms and conditions into the bunker sales contract dated March 31, 2003. Chemoil did not advise OC about the availability of such terms and conditions on Chemoil's website.

(Response at Ex. 1). Plaintiff also submits the declaration of Seok Hyeong Son, a manager of LG International, which provides similarly, as follows:

>The bunker sale confirmation was the only sales document that LG received concerning this transaction. LG was not provided with a copy of any Chemoil terms and conditions in conjunction with that bunker sale.
>
>LG never agreed in writing to the incorporation of any Chemoil terms and conditions into the bunker sales contract dated March 31, 2003. Chemoil did not advise LG of the availability of such terms and conditions on Chemoil's website.

(*Id.* at Ex. 2).

Under the general contract principle of "incorporation by reference," a written provision that is not attached to a physical contract may nevertheless be made part of the contract and, in fact, may be binding even upon a nonsignatory. *See Hellenic Invest. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006); *Jureczki v. Banc One Texas, N.A.*, 252 F. Supp. 2d 368, 373 (S.D. Tex. 2003); *Gilliam v. Global Leak Detection U.S.A., Inc.*, 141 F. Supp. 2d 734, 737-38 (S.D. Tex. 2001); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996). In fact, "as a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where, as here, the provision to which reference is made has a reasonably clear and ascertainable meaning." *JS&H Constr. Co. v. Richmond County Hosp. Auth.*, 473 F.2d 212, 215 (5th Cir. 1973). In the Fifth Circuit, these principles have been applied consistently to contractual references to arbitration clauses. *See, e.g., Hellenic Invest. Fund, Inc.*, 464 F.3d at 517; *JS&H Constr. Co.*, 473 F.2d at 215; *Jureczki*, 252 F. Supp. 2d at 373; *Gilliam*, 141 F. Supp. 2d at 737-38. Further, "a party's failure to read an [incorporated by reference] arbitration agreement does not excuse [it] from arbitration." *Id.*

at 737 (citing *EZ Pawn Corp.*, 934 S.W.2d at 90).  Moreover, an express provision that a plaintiff is bound by the terms of a particular document will not be defeated by a plaintiff's claim that it did not receive a copy of that document.  *See Jureczki*, 252 F. Supp. 2d at 373 (citing *EZ Pawn Corp.*, 934 S.W.2d at 90).

In this case, both the confirmation and the fuel delivery receipt clearly state that the transaction is based on the sales "terms and conditions," which, in turn, contain the arbitration clause at issue.  (*See* Motion to Compel at Ex. A-2 and A-3).  Generally, "'[t]he language used is not important provided the document signed by the [party sought to be charged] plainly refers to another writing.'"  *Jureczki*, 252 F. Supp. 2d at 373 (quoting *Trico Marine v. Stewart & Stevenson Tech. Servs., Inc.*, 73 S.W.3d 545, 549 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (citing *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968)).  Here, it is beyond dispute that the confirmation and the receipt refer to Chemoil's "terms and conditions."  In addition, the confirmation explicitly states, "[p]lease contact us if you require a copy of the standard terms and conditions of sale of marine fuel by CHEMOIL," and the terms were available on Chemoil's website.  (*Id.* at Ex. A and A-2).  For that reason, Plaintiff cannot claim that the "terms and conditions" were not made available to it.  Further, because the "terms and conditions" are labeled "Chemoil Corporation" and are titled "Terms and Conditions for Sale of Marine Fuel," Plaintiff cannot make a reasonable argument that it was unable to determine what writing constituted Chemoil's "terms and conditions of sale of marine fuel," as described in the contract.  (*Id.* at Ex. A, A-2, A-3, and A-4).  Finally, Defendant expressly notified the purchaser that it had a 24-hour period in which to object to the confirmation.  (*Id.* at Ex. A-2).  Plaintiff did not object following receipt of the bunkers.  (*Id.*).  Indeed, it appears that Plaintiff did not express its objection until Defendant raised the arbitration issue in connection with this lawsuit.

But Plaintiff correctly points out that because this case involves a contract for the sale of goods, Article 2 of the Uniform Commercial Code ("U.C.C.") applies. Under Article 2, proposed additional terms to a contract between merchants become part of the contract unless one of three statutory exceptions applies: (i) the offer expressly limits acceptance to the terms of the offer; (ii) the terms materially alter the offer; or (iii) the offeree notifies the offeror that it objects to the additional terms. See § 2-207(b)(2)(a)-(c). In its opposition to the motion to compel arbitration, Plaintiff points to only one of these exceptions, namely, that the terms at issue materially altered the offer. (Response at 14). It argues, specifically, that the "proposed terms" prevent it from pursuing litigation in an appropriate forum of its own choosing and that, having been surprised by the arbitration demand, it "will now be required to pay the selected arbitrators' fees." (*Id*. at 14-15). However, Plaintiff cites no law that compels a finding that incorporating an arbitration clause by reference operates to materially alter the terms of an offer. Further, a material alteration is generally considered to be one that causes surprise or hardship if it is incorporated without the other party's express awareness. *See* U.C.C. Art. 2-207 cmt. 4 (2002). In this case, as detailed above, the language in the confirmation clearly referred to the materials containing the arbitration clause and put Plaintiff on notice that the transaction was based upon these additional materials. (Motion to Compel at Ex. A-4). Indeed, in the confirmation, Defendant offered to supply a copy of these materials and provided Plaintiff with the opportunity to object. (*Id.*). On this record, it is difficult to conclude that Plaintiff has been surprised or caused undue hardship because of the inclusion of Chemoil's terms and conditions of sale.

*Waiver*

In the alternative, Plaintiff argues that Defendant waived its rights under the arbitration clause and that, as a result, to allow it to invoke the clause at this point would cause undue hardship to OceanConnect. (Response at 8-10, 16). It bases this "waiver" argument on a provision of the arbitration clause that is set out below:

> The demand for arbitration shall be initiated by the filing of a written demand with the other party within 90 days after occurrence of the circumstances giving rise to the dispute.

(Motion to Compel at Ex. A-4). Plaintiff alleges that Chemoil should have invoked the arbitration clause within 90 days of the damage to the M/V Gant Vision, and that "had arbitration been timely invoked . . . OceanConnect would likely not be facing a Korean judgment on its own." (Response at 16). This argument, however, is misplaced. Nothing in the arbitration clause suggests that Chemoil, within 90 days of the damage to the ship, should have preemptively invoked the arbitration clause in the event that it might one day be sued in connection with that damage. In fact, because Chemoil was not a party to the suit between Pan Ocean and OceanConnect, the 90-day provision does not appear to apply at all. On August 6, 2006, OceanConnect first filed a claim against Chemoil, but it voluntarily dismissed that action just 14 days later, one week before Chemoil was even served, which afforded Chemoil no reason to invoke the arbitration agreement. *See OceanConnect.com, Inc. v. Shell Trading (US) Co.*, No. H-06-2613 (S.D. Tex. 2006). Once OceanConnect filed the current lawsuit and served Chemoil, however, Defendant did have reason to seek arbitration, and it invoked the arbitration clause barely two months after the suit was filed. Plaintiff has not shown that the U.C.C. precludes enforcement of the arbitration clause at issue or that Defendant somehow waived its right to enforce the arbitration clause. For these reasons, Plaintiff should be bound by the arbitration clause.

*Scope of the Arbitration Clause*

Having found that the arbitration clause at issue is enforceable against OceanConnect, the court must next determine whether Plaintiff's claims "fall[] within the scope of that arbitration agreement." *Webb*, 89 F.3d at 258; *accord Tittle*, 463 F.3d at 418. It is well settled that "'a party cannot be required to submit to arbitration any dispute which [it] has not agreed to submit.'" *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)); *accord Tittle*, 463 F.3d at 418. For that reason, the precise language of the arbitration clause must be scrutinized. *See Webb*, 89 F.3d at 258. The clause in question contains the following provisions:

a.  Any controversy or claim between Buyer and Seller, or between Buyer and the fuel barge contractor, relating solely to the quality or quantity of marine fuels delivered or to be delivered hereunder or to the sum payable for such fuel shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association and in accordance with law. The arbitration award or decision shall be binding unless there has been a prejudicial error of law, in which case the award or decision will be subject to judicial review.

b.  The demand for arbitration shall be initiated by the filing of a written demand with the other party within 90 days after occurrence of the circumstances giving rise to the dispute. Hearing shall be in San Francisco California, at the time and place selected by the arbitrators.

c.  Arbitration shall not prevent either party's recourse to suit to obtain or enforce discovery nor shall it relieve Buyer of its obligation to make full payment for the marine fuels billed to Buyer, which payment shall be made without prejudice to the rights of either party in the arbitration. Failing payment as provided in Article g above for the marine fuels delivered, Seller may institute suit for collection whether or not Buyer calls for arbitration, which suit likewise shall be without prejudice to the rights of either party in arbitration. Such suit for collection shall not be subject to any stay pending arbitration.

d.  Any dispute between Buyer and Seller, or between Buyer and the fuel barge contractor, which is not resolved through arbitration, shall be resolved in an action brought in the United States District Court for the Northern District of California.

(Motion to Compel at Ex. A-4, pp. 9-10).

In Plaintiff's own words, its lawsuit "aris[es] out of a breach of a maritime contract and commission of a maritime tort for the sale and supply of defective bunkers (fuel oil)." (Complaint at 1). Through this lawsuit, Plaintiff seeks contribution from Chemoil for any amounts it must pay for the damages incurred by the M/V Gant Vision due to "unacceptably high" levels of acid in the fuel oil sold by Defendant. (*Id.* at 2). These claims clearly fall within the scope of the arbitration clause, which covers "[a]ny controversy or claim . . . relating solely to the *quality* or quantity *of marine fuels delivered* or to be delivered hereunder." (Motion to Compel at Ex. A-4 [emphasis added]). Plaintiff has not shown that "any legal constraints foreclose arbitration of [his] claims." *See Mitsubishi Motors Corp.*, 473 U.S. at 628; *Brown*, 462 F.3d at 396. For these reasons, then, all of Plaintiff's claims fall within the scope of the arbitration clause and are, therefore, subject to mandatory arbitration. *See* 9 U.S.C. § 2; *Tittle*, 463 F.3d at 418; *Brown*, 462 F.3d at 396.

### *Request for a Stay*

As a final matter, Defendant requests that this action be abated pending arbitration. (Motion at 5). However, a district court may elect to dismiss a case, without prejudice, rather than to stay it, when all of the issues raised in the district court action are submitted to arbitration. *See Apache Bohai Corp., LDC v. Texaco China*, B.V., 330 F.3d 307, 311 n.9 (5th Cir. 2003); *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 676-77, 679 (5th Cir. 1999); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). In *Alford*, the court explained:

> Although we understand that plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.

*Id*. Because all of the issues in this action are subject to arbitration, it would "serve no purpose" to abate this action and retain jurisdiction over it. *See id.* For this reason, the court recommends that, as a reasonable alternative, this action be dismissed, without prejudice.

**Conclusion**

Accordingly, it is RECOMMENDED that Defendant's Motion to Compel Arbitration and to Stay Action be GRANTED, in part. It is further RECOMMENDED that this action be DISMISSED, without prejudice.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have ten business days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c), General Order 02-13, S.D. Texas. Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Lee H. Rosenthal, Room 11535, and to the chambers of the undersigned, Room 7007.

SIGNED at Houston, Texas, this 18th day of December, 2007.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**