## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| OCEANCONNECT.COM, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-07-1053 |
| | § | |
| CHEMOIL CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

This court has reviewed the Memorandum and Recommendation of the United States Magistrate Judge signed on December 18, 2007. The court has made a *de novo* determination after considering the objections of the plaintiff, OceanConnect.com, and the response of the defendant, Chemoil Corporation. Rule 72(b), Fed. R. Civ. P.; 28 U.S.C. § 636(b)(1)(C); *United States v. Wilson*, 864 F.2d 1219 (5th Cir. 1989). This court adopts the Memorandum and Recommendation, grants the motion to compel arbitration, and dismisses this case without prejudice. The reasons are explained below.

## I.      Background

The factual and procedural background was set out in the Memorandum and Recommendation and is not repeated here. It is useful, however, to set out a summary chronology.

April 2003:        Chemoil purchased fuel oil bunkers.

| | |
|---|---|
| June 2003: | Chemoil advised its customers that the fuel oil bunkers may have a problem. |
| 2003: | Chemoil supplied its customer, LG International Pte. Ltd., with fuel bunkers.  LG International sold the bunkers to Ocean Connect with an assignment of any claim it might have against Chemoil from the sale.  OceanConnect sold the bunkers to STX Pan Ocean, a South Korean company that chartered the vessel *Gant Vision*.  That vessel allegedly suffered engine damage as a result of the defective oil bunkers. |
| January 2004: | Chemoil sued Shell Trading (US) Company, the ultimate supplier of the bunkers.  That suit was dismissed on the parties' joint motion. |
| September 2004: | OceanConnect learned of the alleged engine damage to the *Gant Vision*. |
| October 2004: | OceanConnect notified Chemoil of the problems with the *Gant Vision* and requested "advise with respect to indemnification from Chemoil to OceanConnect." (Docket Entry No. 20, Ex. 2). |
| April 2006: | STX Pan Ocean sued OceanConnect, its supplier, in Korea, alleging damages from the defective bunkers. |
| August 2006: | OceanConnect sued Chemoil and Shell in the Southern District of Texas, asserting contribution and indemnity based on the claims STX Pan Ocean asserted against OceanConnect in Korea. In that suit, OceanConnect "vouched" Chemoil into the Korean proceeding.  OceanConnect voluntarily dismissed the suit after Chemoil had been served but before its answer date. |
| January 2007: | STX Pan Ocean obtained a $860,000 judgment against OceanConnect.  It is on appeal. |
| March 2007: | OceanConnect again sued Chemoil in the Southern District of Texas, asserting a right to indemnity and contribution for the South Korean judgment.   Chemoil invoked a contractual arbitration clause and moved to compel the arbitration and to stay the litigation. |

The magistrate judge granted Chemoil's motion to compel arbitration. The magistrate judge held that the contract to sell the fuel oil bunkers contained an enforceable arbitration clause and that Chemoil did not waive its arbitration right because it failed to file a written arbitration demand "within 90 days after occurrence of the circumstances giving rise to the dispute," as the contractual arbitration clause to the parties' contract required. OceanConnect objected to the magistrate judge's rulings that including the arbitration clause was not a material alteration to the parties' contract and that Chemoil did not waive the right to arbitrate. Chemoil responded.

## II.     The Issue of Material Alteration

The offer and acceptance of the fuel oil bunkers were pursuant to a bunker nomination and order confirmation. The order confirmation stated that the sale was based on Chemoil's standard terms and conditions for the sale of marine fuel. Those terms and conditions contained the arbitration provision. The terms and conditions were incorporated by reference. Chemoil offered to supply OceanConnect with a copy of those terms and conditions and an opportunity to object to the terms and conditions. The record showed that the terms and conditions were also on Chemoil's website. OceanConnect did not object to the terms of the confirmation or the incorporated terms and conditions.

The magistrate judge applied Article 2-207 of the Uniform Commercial Code. It provides:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional

3

to or different from those offered or agreed upon, unless acceptance is made conditional on assent to the additional or different terms.

(2) The additional terms   are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:

. . . (b) they materially alter it . . . .

U.C.C. § 2-207 (2007).  The addition of terms is a material alteration if the added terms would "result in surprise or hardship if incorporated without express awareness by the other party."  *Aceros Prefabricados, S.A. v. TradeArbed, Inc.,* 282 F.3d 92, 100 (2d Cir. 2002).

Under *Aceros*, whether the inclusion of an arbitration clause materially alters the oral agreement must be determined on a case-by-case basis, with "[t]he burden of proving the materiality . . . on the party that opposes inclusion."  *Aceros*, 282 F.3d at 100 (citing *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.,* 215 F.3d 219, 223 (2d Cir. 2000)).  To show a material alteration, the nonassenting party "must establish that, under the circumstances, it cannot be presumed that a reasonable merchant would have consented to the additional term."  *Id.*  Evidence of industry custom and the parties' course of dealings often are relevant to determining whether an additional term is material.  *See, e.g.*, *Id.* at 101–02 (arbitration clause not material alteration because arbitration provisions were common in the industry); *Chelsea Square Textiles Inc. v. Bombay Dyeing & Mfg. Co., Ltd.*, 189 F.3d 289, 296 (2d Cir.1999) (arbitration clause not material alteration because the parties had been transacting pursuant to the sales form and same arbitration clause for almost a decade); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995) ("[E]vidence of trade

4

usage and course of dealings between parties supported  . . . finding of an agreement to arbitrate."); *Deer Stags, Inc. v. Garrison Indus., Inc.,* No. 00 Civ. 0267(DC), 2000 WL 1800491 (S.D.N.Y. Dec.7, 2000) (arbitration clause not material alteration because parties had engaged in numerous transactions).

OceanConnect objected to the magistrate judge's analysis on the ground that the Fifth Circuit had ruled before *Aceros* that arbitration clauses in sales confirmations are *per se* material alterations.   This objection is not persuasive.   *Aceros* held that the Federal Arbitration Act preempted the "New York" rule that arbitration clauses were a *per se* material alteration.  Before *Aceros*, the Fifth Circuit applied the New York rule in *Coastal Industries, Inc. v. Automatic Steam Products Corp*., 654 F.2d 375 (5th Cir. 1981).  After *Aceros*, the Fifth Circuit has not ruled on the issue.  But in *Coastal Industries*, the Fifth Circuit held that whether an arbitration clause is a material alteration must be determined on a state-by-state basis.  In *Coastal Industries*, the Fifth Circuit applied the law of New York. That law changed in *Aceros*.

The parties cite Texas law in the present case.  In Texas, additional terms to a contract become part of the contract unless they materially alter the contract.   TEX. BUS. & COM. CODE § 2.207.  An alteration is material "if a change to that document causes it to 'fail to reflect the meaning and intent of the parties to the agreement.'" *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 588 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Associated Sawmills, Inc. v. Peterson*, 366 S.W.2d 844, 848 (Tex. Civ. App.—Dallas 1963, no writ)). Courts applying the Texas version of U.C.C. Article 2-207 have enforced arbitration clauses

when the parties proceed under the contract, maintain a working relationship under the contract's terms, and do not object to the arbitration provision. *See, e.g.*, *Webb v. Investacorp., Inc.*, 89 F.3d 252, 258–59 (5th Cir. 1996) (finding that the plaintiffs "apparently accepted the proposed arbitration clauses" under section 2.207(b) of the Texas Business and Commerce Code "because they signed the Principal Agreements, they maintained a working relationship with [the defendant] under those Agreements, and they never objected to the arbitration clauses"); *Howell Crude Oil v. Tana Oil & Gas Corp.*, 860 S.W.2d 634, 637 (Tex. App.—Corpus Christi 1993, no writ) (finding that the parties "recognized the existence of a contract" that incorporated an arbitration clause because "both parties' written documents contained the same arbitration clause"). This is consistent with how *Aceros* read the New York application of Article 2-207 of the U.C.C.

Other courts since *Aceros* have also adopted its approach or result. *See, e.g.*, *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709 (7th Cir. 1987) (holding that an arbitration clause in a written confirmation was not a material alteration because it was consistent with the parties' previous course of dealing); *In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274 (4th Cir. 2007) (holding that terms consistent with trade usage or course of dealing may represent additional terms but generally do not materially alter a contract); *Standard Bent Glass Corp. v. Glassrobots Oy*, 3.3 F.3d 440, 446–48 (3rd Cir. 2003) (both incorporation by reference and lack of material alteration allows enforcement of arbitration clause; no material alteration when prior course of dealing was consistent).

OceanConnect also argues that even under a case-specific analysis, the arbitration clause at issue was a material alteration.  OceanConnect points to the affidavit from its president, Thomas K. Reilly, disagreeing with the affidavit of Adrian Tolson, Chemoil's Vice President of Sales and Marketing.  Tolson stated in his affidavit that arbitration clauses in maritime transactions are "commonly included in maritime contracts and are the norm in the maritime industry."  (Docket Entry No. 14, Ex. A).  Reilly stated that in his experience, the "use of arbitration clauses varies widely in the maritime industry" and gave three examples of companies that use terms and conditions that do not include arbitration clauses.  (Docket Entry No. 15, Ex. 1).  Reilly asserted that in addition to OceanConnect, ExxonMobil and TotalFina do not include arbitration clauses in their terms and conditions for marine fuel sales.

This disagreement between the affidavits of Reilly and Tolson does not require a finding that OceanConnect was surprised by the inclusion of the arbitration provision.  Surprise, within the meaning of the material alteration exception of § 2-207(2)(b), has both the subjective element of what a party actually knew and the objective element of what a party should have known.  *See Am. Ins. Co. v. El Paso Pipe & Supply Co.*, 978 F.2d 1185, 1191 (10th Cir.1992); *In re Chateaugay Corp.*, 162 B.R. 949, 956–57 (Bankr. S.D.N.Y. 1994).  "A profession of surprise and raised eyebrows are not enough: conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."  *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996).  To carry the burden of showing surprise, a party must establish that, under the circumstances, it cannot be

7

presumed that a reasonable merchant would have consented to the additional term.  *See Bayway Ref. Co.*, 215 F.3d at 224; *Union Carbide Corp. v. Oscar Mayer Foods Corp.*, 947 F.2d 1333, 1336 (7th Cir. 1991).

Chemoil met its burden of proving that arbitration is a usage of trade in maritime transactions.  Numerous cases reflect the frequent use of arbitration in maritime contracts. *Ibeto Petrochemical Industries Ltd. v. M/T Beffen*, 475 F.3d 56 (2d Cir. 2007); *Arcadia Petroleum Ltd. v. Sun Int'l Ltd.*, 192 Fed. Appx. 164 (3d Cir. 2006); *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89 (2d Cir. 2006); *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567 (2d Cir. 2005); *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891 (5th Cir. 2005).  The affidavit from Reilly does not overcome this showing.  The U.C.C. does not require that a party to a contract have actual knowledge of a usage of trade before that usage of trade is incorporated into the contract.  *See* TEX. BUS. & COM CODE § 1.303(c) (defining usage of trade as "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question" ); Ann. § 25-1-303(c) (same); WHITE & SUMMERS, § 3-3 ("[I]t is not necessary for both parties to be consciously aware of the trade usage.  It is enough if the trade usage is such as to justify an expectation of its observance."); *id*. ("[A] party can be chargeable with a usage of trade of which it is ignorant. . . .").  Reilly's declaration is insufficient to overcome Chemoil's showing.

Additionally, the record shows that OceanConnect and Chemoil had an established course of dealing.  The evidence included bunker confirmations and fuel delivery receipts

with identical arbitration provisions in at least seven sales transaction between November 2002 and April 2003, before the April 2003 bunker sale transaction at issue.  The record shows that OceanConnect issued the bunker nomination to Chemoil, which confirmed it to OceanConnect.  OceanConnect used LG International as the nominal "buyer" because OceanConnect had exhausted its available credit, but LC International immediately sold them to OceanConnect, which sold them to Pan Ocean.  The presence of LG International does not affect the usage-of-trade or the course-of-dealing analysis because, as noted, OceanConnect issued the bunker nomination to Chemoil and Chemoil issued the confirmation to OceanConnect.  The evidence of trade usage and the parties' course of dealing defeats a claim of surprise.

Finally, OceanConnect has not demonstrated hardship by the inclusion of the arbitration provision.  Although the Official Comment to the U.C.C. seemingly treats hardship as an independent ground for finding that an alteration is material, courts have questioned whether this is the case.  *Union Carbide,* 947 F.2d at 1336 ("Hardship is a consequence [of material alteration], not a criterion. (Surprise can be either.)"); *see also, e.g.*, *Suzy Phillips Originals, Inc. v. Coville, Inc.,* 939 F.Supp. 1012, 1017–18 (E.D.N.Y.1996) (citing *Union Carbide* with approval and limiting the test for material alteration to surprise); *In re Chateaugay,* 162 B.R. at 957 (same).  Typically, courts that have relied on hardship to find that an additional term materially alters a contract have done so when the term is one that creates or allocates an open-ended and prolonged liability.  *See, e.g.*, *Bayway Ref. Co.*, 215 F.3d at 226; *St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*, 687 F.Supp. 820, 827

(S.D.N.Y.1988) (finding a hardship in "shift[ing] all risks for any dispute to the buyers"), *aff'd,* 895 F.2d 1410 (2d Cir.1989) (unpublished table disposition); *Charles J. King, Inc. v. Barge LM-10,* 518 F.Supp. 1117, 1120 (S.D.N.Y.1981) (finding a warranty and insurance paragraph to be unduly broad and the indemnity provision ambiguous).

In this case, OceanConnect does not claim hardship from the arbitration clause, but rather from Chemoil's failure to invoke arbitration until OceanConnect filed this suit. "[H]ad arbitration been timely invoked . . . OceanConnect would likely not be facing a Korean Judgment on its own." (Docket Entry No. 20 at 16). The timing of arbitration is not a basis for finding that the inclusion of the arbitration provision itself creates hardship. Moreover, whether Chemoil had invoked arbitration in 2004 (when OceanConnect first notified Chemoil of the problem with the *Gant Vision*), or in 2006 (when OceanConnect first sued Chemoil in Texas (and shortly thereafter dismissed the suit)), OceanConnect would have been required to defend Pan Ocean's claim against it in the South Korean suit. The timing of Chemoil's arbitration demand is not hardship that supports a finding of material alteration from the inclusion of the arbitration provision in the parties' contract.

## III.    The Issue of Waiver

The magistrate judge found that OceanConnect had not waived its arbitration right by waiting until this suit was filed to demand arbitration. The arbitration clause required that "[t]he demand for arbitration shall be initiated by the filing of a written demand with the other party within 90 days after occurrence of the circumstances giving rise to the dispute. The magistrate judge found that "the circumstances giving rise to the dispute" triggering the

10

90-day period were not the sale of the fuel bunkers, nor the first notice Chemoil received of a potential problem with the fuel bunkers, nor the first assertion by OceanConnect that it would seek indemnity or contribution for damages it had to pay because of damage to the *Gant Vision* arising from the effect of the sale of the fuel bunkers.  Rather, the magistrate judge found that the "circumstances giving rise to the dispute" triggering the 90-day deadline did not occur before OceanConnect filed suit against Chemoil alleging the right to indemnity or contribution for the South Korea judgment arising from the damage to the *Gant Vision*. The magistrate judge rejected OceanConnect's argument that Chemoil should have invoked the arbitration clause within 90 days of the damage to the ship merely because Chemoil might one day be sued in connection with that damage.

OceanConnect objected on the ground that at the latest, the 90-day period began no later than when OceanConnect first sued Chemoil in the Southern District of Texas seeking indemnity or contribution and "vouched-in" Chemoil to the Korean proceeding.  That occurred in August 2006.  The magistrate judge rejected that argument because OceanConnect dismissed that suit without prejudice two weeks after filing.  Although Chemoil was served with process before dismissal, the answer date had not arrived before OceanConnect dismissed the case.  The magistrate judge concluded that the dispute was OceanConnect's claim that Chemoil was required to reimburse it for the judgment obtained by Pan Ocean in the South Korean proceeding.  The magistrate judge concluded that the 90-day period for demanding arbitration triggered by the "occurrence of the circumstances

giving rise to the dispute" began to run when OceanConnect filed and pursued this suit for indemnity and contribution against Chemoil.

In addition to the ground the magistrate judge identified for declining to find waiver, another basis is present. Whether a request for arbitration is timely made under an arbitration agreement is for an arbitrator to decide. *See Commerce Park at DFW Freeport v. Mardian Constr. Co.,* 729 F.2d 334, 339 n. 5 (5th Cir.1984) (noting that "matters of procedural arbitrability, such as, *inter alia,* whether the request for arbitration was timely under the arbitration agreement, are for the arbitrator to decide"); *see also Oil, Chem. and Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co.,* 815 F.2d 338, 341 (5th Cir.1987) ("Questions of timeliness are ones of procedural, not substantive arbitrability. As such . . . timeliness should be decided by an arbitrator if the underlying substantive claim is arbitrable.") (citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557–58 (1964)); *Smith Barney Shearson, Inc. v. Boone,* 47 F.3d 750 (5th Cir.1995) (a brokerage firm sought a declaratory judgment in district court that its former customers' grievances were not subject to arbitration and argued that the customers had filed their grievances too late under the arbitration rules that applied under the parties' agreements; the district court held that the issue of timeliness was itself subject to arbitration and refused to grant the firm the relief it sought and the Fifth Circuit affirmed).

In the present case, OceanConnect asked this court to find a waiver of Chemoil's right to arbitrate on the basis that it failed to comply with the arbitration clause time period. Whether Chemoil complied with the procedural requirements for arbitration and the effects

of any failure to do so are questions for the arbitrator, not the court, to decide. *See Boone,* 47 F.3d at 754. ("[T]he timeliness issues raised in this case are issues of procedural arbitrability and must be decided by the arbitrator.").

**IV.     Conclusion**

This court adopts the memorandum and recommendation of the magistrate judge, overruling the objections.  This case is dismissed, without prejudice, to permit the parties to proceed to arbitration.

SIGNED on January 23, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

13